THE PEOPLE v. AUGUSTUS ARNOLD, ALIAS GEORGE HOUGHTON.

*Impeaching a complaining witness—Waiver of right to refuse to criminate one's self—Statement of accused as evidence.*

A witness may waive the personal privilege of refusing to criminate himself.

In a prosecution for larceny from a store, committed while the merchant's attention was engaged by defendant, who was tried as accomplice, the merchant, being the complaining witness, and having stated that he had once been in a banking firm, was asked on cross-examination the following question: "Did you not, while a member of that firm, extract from an envelope securities which were left in your vault for safe keeping, and use the proceeds for stock speculations in New York?" *Held* that though the witness might refuse to criminate himself, the question should have been allowed.

The statement of a person on trial is in the nature of evidence and must go to the jury accordingly, who can give it such credit as they believe to be due.

It is error to lead a jury to suppose that they can reject a prisoner's statement merely because it is not supported by other testimony.

A person tried as an accomplice in a theft supposed to have been committed from a store while he was engaging the merchant's attention, explained that he was in the store inquiring prices at

the request of persons in other States. He did not produce these persons as witnesses, nor obtain their depositions. On the trial the prosecuting attorney referred to his neglect to bring confirmatory evidence as a proof that his statement "was a lie." The judge refused to instruct the jury that no inference could be drawn from his not having brought witnesses from other States, but referred to the rule that the failure to produce evidence within one's reach, may be considered by the jury, and to the provision allowing accused persons to obtain the testimony of foreign witnesses by commission. *Held* that there was ground for thinking that the jury supposed these proceedings amounted to an intimation from the court that the prisoner's statement might be set aside simply because he had not brought cumulative evidence.

Exceptions before judgment to the Recorder's Court of the city of Detroit. Submitted April 23. Decided April 24.

LARCENY. The facts are stated.

Attorney General *Otto Kirchner* and *Charles E. Miller* for the people. Rulings upon the cross-examination of a witness to show his previous life and conduct are discretionary, *Threadgool v. Litogot*, 22 Mich., 271; if one can rebut and explain evidence against him, the omission to do it furnishes strong ground of inference against him, Broom's Legal Max., 939; 3 Starkie's Ev., 937; 1 Greenl., Ev., § 37; 1 Whart. Crim. Law, § 722; 3 Phillips' Ev., 473; 3 Russ. on Crimes [9th ed.], 217; *Knowles v. People*, 15 Mich., 408; *People v. McWhorter*, 4 Barb., 438.

*Hawley & Firnane*, for respondent.

GRAVES, J. This case comes up on exceptions before judgment.

The defendant was convicted in the Recorder's court of the city of Detroit, on a charge of stealing sixty-four dollars from the store of Oren T. and Alvin N. Sabin in the day time. The money was kept in a cigar box in a vault in the office.

There was evidence that Oren T. Sabin was alone in the office shortly before noon, and that a young man between fifteen and twenty years of age entered and desired to get change for a five dollar bill; that Sabin opened the vault and took out the box for the purpose of giving the change, when the young man remarked that the change was not such as he wanted, and passed out; that Sabin restored the box to the vault, and closed the safe door and turned round to go again to his desk, and at that moment the defendant stepped in and stated to Sabin that he wanted to buy ten barrels of flour; that the latter then showed defendant samples contained in boxes in the office, but he desired to see it in the barrel; that they then went back into the warehouse, where Sabin unheaded a barrel, he at that time being with his back towards the street entrance, and defendant facing it and in a position to see any one entering from the street to go to the office; that at this time one Dubois entered and told Sabin he had better look into his office and see if every thing was right there, and that Sabin went immediately to the office and discovered that the cigar box containing the money had been taken from the vault and carried off; that Dubois then explained that he saw a young man leaving the office carrying under cover of a silk handkerchief something like a cigar box, and that Sabin on getting this information joined with Dubois in making a hasty search for the young man, but without success, and in the meantime defendant went out.

This statement sufficiently unfolds the transaction for the present purpose.

It has not been claimed that defendant took the money in person, but the theory of the prosecution at the trial was, and is now, that the young man referred to was the actual perpetrator of the theft, and that the defendant was present as an active accomplice, co-operating in the offense, and the case was conducted throughout in the court below according to this view.

On the cross-examination of the witness Sabin, he swore that he had formerly been a member of the firm of Granger & Sabin, bankers, at Detroit. Defendant's counsel then asked this question: "Did you not, while a member of that firm, extract from an envelope securities which were left in your vault for safe keeping, and use their proceeds in stock speculations in New York?" The court on the unexplained objection of the prosecuting attorney refused to allow the question. We think this ruling was not well advised. It was important for the defendant that the jury should be informed as far as practicable, without infringement of the rules of law, in regard to the moral character and antecedents of the witness, and the question was designed to elicit such information. No doubt the witness might have declined to answer under the acknowledged rule, that no one can be compelled to criminate himself. But this is matter of personal privilege which a witness may waive, and is not a ground of objection by the people, and here the witness did not object, and we cannot assume but that he was not only willing, but desirous to answer.

There is another consideration not to be overlooked. The defendant was entitled to satisfy the jury, if he could, that the witness and not himself was in league with the active thief, and was the true accomplice, and in that view the evidence called for by the question had some pertinence.

It may be said that any defense of that kind was too improbable to be countenanced. A court cannot deny opportunity to raise such a defense upon any personal assumption in regard to the character of the person who may be incriminated, and the accused, we think, had the undoubted right to be heard upon the theory mentioned.

The defendant made his statement to the jury, and among other things, to explain how it happened that he was in Detroit and went to inquire about flour at Sabin's,

he stated that he lived at Cleveland, Ohio, and had been engaged there in shipping cheese to Chicago; that a few days prior to the theft in question, a Mr. Foster, from Buffalo, called upon him to get him to buy apples in Michigan; that being called to Chicago on business, he returned from there through Michigan as far as Detroit, making inquiries on the way about apples; that he reached Detroit on the first of October, and the next day received a letter from his cousin, who was head book-keeper in the firm of Chandler & Sons, on Ontario street, Cleveland, asking him to make inquiries at Detroit about flour; that on the 3d of October, the day of the larceny, he visited several establishments and inquired about prices, and finally went to Sabin's for the same purpose.

Defendant neither procured the attendance of his cousin from Cleveland or of Foster from Buffalo as witnesses in his behalf, nor made any attempt, so far as appears, to obtain their depositions.

When the prosecuting attorney came to argue the case to the jury, he contended that the fact that the defendant had not produced his cousin and Foster as witnesses, nor any other business men to show his business to have been as he had stated, proved that his statement in regard to such matters "was a lie."

The defendant thereupon requested an instruction, among others, that no inference against the defendant could be drawn from his not having brought witnesses from other States; that his not obtaining such witnesses might be owing to many causes beyond his control, and that no unfavorable presumption could be indulged as a consequence of his not getting them. The instruction was refused, and after referring to the rule that the failure to produce evidence in the power of a party is a circumstance to be considered by the jury, and after noticing the provision allowing the defendant in a criminal case to obtain the testimony of foreign witnesses by commission, the judge after some further

explanation, left it to the jury to infer, from the failure of defendant to produce the witnesses from Buffalo and Cleveland, or their testimony, that his own statement as to transactions with them was wholly untrue.

In view of the course of argument adopted by the prosecuting attorney, and the request by defendant's counsel, and the actual instructions, there is ground for thinking the jury were misled. It was natural for them to construe the charge as amounting to an opinion of the judge that the statement might be set aside, not because it was in itself improbable or overborne by evidence of superior value, but solely because the defendant had not adduced cumulative evidence, or additional or other testimony to the same points.

Now the statement of a defendant on his trial on a charge of crime is in the nature of evidence, and is required to be submitted to the jury as of that character, and there is no authority for saying a jury may not receive it and act upon it even in case the facts related or some portion of them are not supported by the testimony of witnesses. The law allows such weight to be given to the statement as the jury consider may be due to it, and it cannot be assumed by the judge, on submitting it, that it is not to be believed; and hence it is not competent to lead the jury to suppose they may reject the facts given in the statement simply because they are not proved by others.

The conviction must be reversed, and a new trial ordered.

The other Justices concurred.